122 F.3d 1071
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
Milton Louis GRINSTEAD, Plaintiff-Appellee,
v.
THE UNITED STATES of America, acting through the Farmers
Home Administration, Defendant-Appellant.
 No. 96-16536.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted August 15, 1997.
Decided Sept. 4, 1997.
 
 1
 Appeal from the United States District Court for the Northern District of California, No. CV-94-03452-CAL; Charles A. Legge, District Judge, Presiding.
 
 
 2
 Before: TASHIMA and THOMAS, Circuit Judges, and SEDWICK,** District Judge.
 
 
 3
 MEMORANDUM*
 
 
 4
 Milton Louis Grinstead ("Grinstead") appeals the district court's summary judgment in favor of the United States, in his action under the Administrative Procedures Act ("APA"), 5 U.S.C. § 701, et seq., challenging the Farmers Home Administration's ("FmHA")[1] decision not to offer him loan servicing. "Loan servicing" essentially is a restructuring of the borrower's obligations to FmHA on terms more favorable to the borrower.[2] Grinstead argues that FmHA acted arbitrarily and capriciously and violated his Fifth Amendment right to due process by deciding to foreclose on his property without offering any further extensions of time or restructuring options with regard to his farm loans.
 
 Discussion
 
 5
 Pursuant to the APA, agency decisions may be set aside only if "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). Under the arbitrary and capricious standard, a reviewing court must consider only whether an agency's decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment. See Dioxin/Organochlorine Ctr. v. Clarke, 57 F.3d 1517, 1521 (9th Cir.1995).
 
 
 6
 The decision of the district court to grant or deny a motion for summary judgment is reviewed de novo. Tzung v. State Farm Fire and Cas. Co., 873 F.2d 1338, 1339-40 (9th Cir.1989). A reviewing court must view the evidence in the light most favorable to the nonmoving party, determine whether there are any genuine issues of material fact, and determine whether the district court correctly applied the relevant substantive law. Id. Therefore, this Court reviews de novo the district court's application of the arbitrary and capricious standard of review.
 
 
 7
 In November 1988, after Grimstead failed to make his loan payments, and FmHA sent him a notice of his eligibility to participate in primary and preservation loan servicing pursuant to 7 C.F.R. § 1951.907. Grinstead sought primary servicing by filing a Farm and Home Plan ("FHP"). While Grinstead's FHP application for loan servicing was pending, he sought and received from FmHA permission to suspend farming operations on his property due to a physical disability.
 
 
 8
 Pointing to 7 C.F.R. § 1965.26(d)(2), Grinstead first contends that, because he was already in default under the terms of the promissory notes for failure to pay at the time he was given permission not to farm his property, he should be exempt from foreclosure for so long as he remains disabled. However, § 1965.26 does not exempt a borrower from foreclosure due to disability. Each of the promissory notes executed and delivered by Grinstead to FmHA contain the following provision defining default:
 
 
 9
 DEFAULT: Failure to pay when due any debt evidenced hereby or perform any covenant of agreement hereunder shall constitute default under this and any other instrument evidencing a debt of Borrower owing to, insured or Guaranteed by the Government or securing or otherwise relating to such debt; and default under any such other instrument shall constitute default hereunder. UPON ANY SUCH DEFAULT, the Government at its option may declare all or any part of any such indebtedness immediately due and payable.
 
 
 10
 FmHA's waiver of the default resulting from Grinstead's failure to continue farming due to his disability does not act as a waiver for Grinstead's default for nonpayment.
 
 
 11
 Grinstead, who refused to sign the FHP and relied upon the FmHA to complete the FHP, next argues that, because the data used to compile the plan was inaccurate, FmHA acted arbitrarily and capriciously in denying his request for loan servicing. The record reflects that after Grinstead failed to submit a complete FHP, in order to comply with regulations, FmHA was forced to compose a FHP based on Grinstead's past production history. FmHA made several attempts to gather accurate information from Grinstead and took steps to ensure that it had in its possession all pertinent data when deciding whether Grinstead was able to generate sufficient income to qualify for primary loan servicing. For example, a letter dated September 21, 1992, reflects that in an attempt to address concerns Grinstead had regarding the FHP, FmHA made several modifications to the plan. The record also reflects that FmHA provided Grinstead with a detailed breakdown of the method it used to calculate its numbers. Several legal theories may be applicable here, including ratification, estoppel, and waiver. Suffice it to say that, because Grinstead was given several opportunities to and did participate, albeit at a very low degree, in the preparation of the FHP, his complaint regarding the information in the FHP is unfounded.
 
 
 12
 All of the information provided FmHA through the FHP is processed through the use of a computer program entitled the "Debt Adjustment and Loan Restructuring System" ("DALR$"). DALR$ computes the present value of the restructured loan and the net recovery value of the collateral property. 7 U.S.C. § 2001. If the borrower can service a restructured loan with a present value that is greater than or equal to the liquidation recovery value of FmHA's collateral, FmHA must restructure the loan, thereby allowing the borrower to continue his farming operation. 7 U.S.C. § 2001(c)(5). If servicing the restructured loan is impossible, then FmHA must still offer the borrower the opportunity to buy out the property for the amount of its net recovery value to FmHA. 7 U.S.C. § 2001(c)(6). Based on the FHP, FmHA concluded that even with loan servicing; after paying all operating expenses, taxes, scheduled payments on all debts and family living expenses, Grinstead would have had an available balance of negative $6,048. Therefore, FmHA did not act arbitrarily or capriciously when it decided not to offer Grinstead any further extensions of time or restructuring options with regard to his outstanding FmHA loans.
 
 
 13
 Finally, Grinstead contends that FmHA violated his constitutional rights to due process under the Fifth Amendment to the United States Constitution because its acts and conduct have deprived and continue to deprive him of valuable property rights--rights to appropriate servicing and to peacefully live on his property free from the threat of foreclosure. Grinstead does not contend that FmHA failed to perform any of a series of steps which, by statute and regulation, it is required to perform before denying loan servicing. Thus, Grinstead's argument that his constitutional rights to due process under the Fifth Amendment were violated is meritless.
 
 
 14
 The judgment of the district court is AFFIRMED.
 
 
 
 **
 The Honorable John W. Sedwick, United States District Judge for the District of Alaska, sitting by designation
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir. R. 36-3
 
 
 [1]
 The agency formerly known as the Farmers Home Administration ("FmHA") has been combined with certain other Department of Agriculture agencies to form the Farm Service Agency. At the time of the events in question FmHA was a separate agency
 
 
 [2]
 Farm loan debt servicing is governed primarily by 7 U.S.C. § 2001, enacted as § 615(a) of the Agricultural Credit Act of 1987, Pub.L. 100-233, 101 Stat. 1568 (1988). The regulations implementing the statutory changes brought about by the ACA are set forth at 7 C.F.R. Part 1951, Subpart S, §§ 1951.901--918